Bradbury, J.
There was no dispute about the essential ■ facts of the case. It appears from the bill of exceptions that, prior to May 19, 1885, Monroe Township, Carroll County ^ *596 constituted a single school district, composed of a number of sub-districts of which the village of Dell Roy, known as sub-district No. 5, was one; that in the year 1882, the plaintiff bought the lot and advertised for bids to construct the house in disputo; that at a meeting, of the board of education, held September 18, of that year, the bids were opened and the board at the same meeting, by resolution, established for the township a school of higher grade than primary, and appropriated and set apart for that purpose this house, when it should be built, together with the lot and all its appurtenances ; that during the ensuing winter it caused such school of higher grade than primary to be taught therein; that after-wards the board rejected .a resolution introduced to transfer this property to sub-district No. 5, for a sub-district school house, but did from time to time, by special resolutions, permit sub-district No. 5 to use said house for limited periods of time; that on May 19, 1885, the territory composing sub-district No. 5 was organized into a village, or independent, school district, which is the defendant in error; that at the time of its organization into a village district there were within the territorial limits two school houses besides the one in controversy; and that upon completing its organization the defendant took possession of the latter house, as well as of .the two others, and has retained such possession ever since.
Counsel for plaintiff in error claim that, upon the undisputed facts as above recited, the judgments of the common pleas and circuit courts should have been for their client, while, on the other hand, counsel for the defendant contend, not only that the judgment of the lower courts upon the facts, we're correct, but that this court is not completely advised concerning the undisputed facts, because the bill of exceptions does not contain all the evidence that was before the court of common pleas. An examination of the bill of exceptions will disclose that the contention of defendant’s counsel, that it does not contain all the evidence, is incorrect. The only omission claimed is, that the bill of exceptions does not contain a report of the plaintiff made August 31, 1883. This report was offered by the defendant, evidently, to show that it con *597 tained no reference to a high school, and the. record discloses that the plaintiff then admitted it contained no such reference. This was to obviate the necessity of introducing in evidence the report; and as the record does not contain any statement that it was in fact admitted, the inference is that it was not. But were there no such inference, yet as the bill of exceptions states that it contains “ all the evidence introduced by either party,” it would be conclusive of the matter, unless upon its face some omission affirmatively appeared, and the circumstances alluded to above fall far short of establishing such omission, even if the correctness of the inference drawn by the court from them should be questioned.
The bill of exceptions, then, being complete, did the undisputed facts which it discloses, entitle the plaintiff to a judgment? The school house in dispute was built by the township board to be used for teaching a school of higher grade than primary, for the benefit of the youth of the whole township. It was, presumably, located at a point most convenient for that purpose, and which happened to fall within the territory afterwards organized into a separate village district, but was not designed for the benefit of that territory alone ; nor was .it ever afterwards set apart by any action of the township board for the use of that territory. On the contrary, not only was a resolution to that effect defeated, but resolutions granting its use to the sub-district temporarily were couched in the most cautious and exact terms, to avoid, evidently, any inference that the township board intended to yield up any right thereto, beyond that expressly granted.
There being, then, nothing in the bill of exceptions from which it can be inferred that the township board ever renounced its general control over, or transferred to the defendant its title to, the property, this must have been accomplished, if at all, by operation of law, from the circumstance that it was situated within the territorial limits of the defendant when that territory was organized into a village district. It is claimed that section 8972, of the Revised Statutes, has this effect. That section reads as follows : “ All property, real or personal, which has heretofore vested in and is now held by *598 any board of education, or the council of any municipal corporation, for the use of public or common schools in any district, is hereby vested in the board of education provided for in this title, having under this title jurisdiction and control of the schools in such district.”
That the school property in dispute in this action is embraced by the terms of this statute is clear; it is property “ held * * * for the use of public or common schools,” and it is situated in the district, the schools of which are under the “jurisdiction and control” of the defendant board, so that, unless the general words of the statute can be restrained or limited by ascertained principles of construction, they would vest the title of the property in the defendant. These principles require us to examine the whole law upon the subject, and learn, if possible, the general object of the law maker, and give to any particular section a meaning in harmony with this general object, if the language will bear it; or, to forbear to give it a meaning that will defeat some special purpose of the legislature, clearly discernible in some other portion of the entire enactment.
The purpose of the legislature, in enacting the school law of 1873, was to provide a harmonious system of public schools for the education of the youth of the state, in both the primary and higher branches of learning. Township boards of education were authorized to create and maintain, for the benefit of the whole township, schools of a higher grade than primary. For this purpose they have power to procure grounds at points most accessible and convenient, erect suitable houses and provide appropriate instruments and appliances. Can it be reasonably supposed that the legislature contemplated that, after a township board had, perhaps, expended a large sum of money in purchasing a site convenient for the whole township, erected a building in every way suitable and commodious for the youth of the township who might be' desirous of higher education, and provided instruments appropriate to the object in view, their hopes could be defeated, and house, grounds and appliances wrested from them, by the inhabitants, of the territory in which the building was situated organizing *599 themselves into a separate school district ? This result could be brought about if the general language of section 3972 can not be restrained by construction. That they should take •with them and hold in their new and independent state, all the public school property which was in their territory and had before been used by them alone, is entirely reasonable. The other portions of sub-districts of the township had no practical interest m or beneficial use of it before the separation. Each remaining sub-district had similar property in its limits, subject to its particular use, and therefore suffered no injury by the transfer of the title and control to the same persons, though differently organized, who had before enjoyed its sole use. Here, then, is property that is embraced within the general terms of section 3972, and which, it is reasonable to suppose, was intended to be transferred to the separate district upon its organization. To hold that grounds, buildings ■and appliances, designed and intended to secure to the youth •of the whole township an opportdnity for education in the higher branches of learning could be thus transferred, would •defeat a legislative purpose clearly discernible upon the face •of the law; for township boards could hardly be expected to provide the necessary means to accomplish it, where the requisite property should be held by so uncertain a tenure.
The rule that general words used in a statute should be limited to the objects to which it is apparent the legislature intended to apply them, is established upon the authority of the text books and of almost innumerable adjudicated cases. Hardcastle, in an ably written and recent treatise on the construction of statutes, reviews the English cases on the subject from a very early period, and on page 75 says : “The question whether, when the legislature have used general words in a statute * * * those words are to receive any (and, if •so, what) limitation, is one which may sometimes be answered by considering whether the intention of the legislature on this point can be gathered from other parts of the statute.” And he cites from Stradling v. Morgan, Plowden, 204, the following language with approval: “ The judges of the law, in all times past, have so far pursued the intent of the makers *600 of statutes, that they have expounded acts which are general in words to be but particular where the intent was particular; * * * and those statutes which comprehended all things in the letter they have expounded to extend but to some things.”
This principle is peculiarly apposite to the case before us; the words of the statute embrace and would transfer, if not limited, all the school property within the territorial limits of the defendant to its control and use; but there can be gathered from the statute a legislative intent incompatible with, the unlimited meaning these general words convey; — an intention to empower the township board of education to establish a township school of a higher grade than primary, and to acquire and hold property for that purpose, though the territory within which the property may be located should organize itself into a separate school district.
This rule of construction finds support in the decisions of neatly every state of the’Union, but it is only necessary to notice some of the cases in our own state. The first case in Ohio is that of Burgett v. Burgett, 1 Ohio, 469, where the court construe the statute making “ every gift, grant, or conveyance of lands, * * * to defraud creditors, utterly void and of no effect.” These words are general, and if not limited by construction, would make such conveyance void as to all persons; but the court limited it to persons whom it was the intention of the legislature to protect, that is to creditors and subsequent purchasers. On page 480, Judge Burnet in delivering the opinion of the court says: “ The intention of the law makers may be collected from the cause or necessity of the act, and statutes are sometimes construed contrary to the literal meaning of the words. It has been decided, that a thing within the letter, was not within the statute, unless within its intention. The letter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter.” The same principle was adopted in Whitney et al. v. Webb et al., 10 Ohio 513 in construing the. words “beyond the seas” in the statute of limitations. See also Slater et al. v. Cave, 3 Ohio St. 80. It is unnecessary to refer to all the cases in this state in sup *601 port of this principle of construction. There is, however, one other case to which I desire to refer; it is that of Sawyer v. The State ex rel. Horr, 45 Ohio St. 343. In that case the court was required to construe the statute (84 Ohio L. 240) creating a new judicial circuit and providing for three additional circuit judges, which it provided should be elected “ on the first Tuesday of' November next.” The court upon a consideration of the whole statute, in connection with the general election law of the state, rejected the language quoted and held that the legislature must have intended the election to be held on the “ first Tuesday after the first Monday of November.” It was contended in that case that the language was too plain to admit of such construction, but an examination of the opinion of Owen, C. J., will show the holding of the court to be in line with the best considered cases.
We hold, therefore, that by the established principles of construction, the general words of sec. 3972 Rev. Stats., must be limited so as not to vest in a separate school district, carved out of ,a township, property that had been acquired and was> held for the benefit of the whole township.

The judgment of the circuit court, and that of the common pleas,, is reversed, and a judgment for the plaintiff upon the undisputed facts.